THE WARREN RAILROAD COMPANY *ads.* THE STATE.

Where a railroad charter gives the company power to alter and grade the public and other roads crossing their railroad, so as not to impede the travel on such roads, the company have no right to change the route of any public or other road.

Indictment for obstructing a public highway.

Argued before the Chief Justice, and Justices ELMER and HAINES.

*J. M. Robeson,* for the state.

*Shipman* and *Williamson,* for defendants.

The CHIEF JUSTICE. The defendants were indicted for obstructing an ancient public highway in the township of Oxford, in the county of Warren, by building thereon an embankment, so as to make the road impassable at that point. As a substitute for the road so obstructed they provided another, avoiding the old route and embankment. The new road diverged from the old for a short distance only, and then returned into it. The embankment constituted a part of their railway, used by them as such.

The defendants claim the right to change the route of the road at the place in question under the 9th section of their charter, " that it shall be the duty of the said company to construct and keep in repair good and sufficient bridges and passages over and under the said railroad, where any public or other road now, or to be hereafter laid out, shall cross the same, and to alter and grade the said public or other roads, so that the passage of carriages, horses, and cattle passing and repassing shall not be impeded thereby."

It is claimed that the words alter and grade the said public or other roads, &c., are of sufficiently large import to include changing the route of the roads.

No such construction should be given to these words by unnecessary implication. Public highways ought not to be destroyed, even in part, under pretence of legislative authority, unless it be conferred either in express terms or by necessary implication. If the words are ambiguous, the construction ought to be in favor of the common right of highway, not against it.

The design of the act was to impose a duty upon the defendants of making good and sufficient passages over or under the railroad at the point of crossing of the public highway. The place where the passage is required to be made seems to forbid the idea of change of route of the common road. In like manner, the requirement that the passage shall be over or under the railway, appears to be

predicated upon the assumption that the route is to remain the same.

The latter part of the section was not intended to enlarge the meaning of the former, but merely to give the power to do what the previous part required to be done to make passage over or under, which could not be done, unless the road surface was altered and graded anew at that point. The terms "alter and grade," as they are coupled together, are evidently used as synonymous—the grading is to be the kind of alteration to be done to make the passage convenient.

Again, if the construction of the defendants be adopted, it would confer upon the defendants the power of altering the route of public roads hereafter to be laid out; for the passages are to be built over or under roads now, or hereafter to be laid out, where they cross the railway, and the power is to alter and grade the said public roads, which includes future as well as existing roads, by the reference to the former part of the section. It could hardly have been the intention thus to supersede public roads laid out by the proper officers at the arbitrary will of the railroad company, even when laid out subsequently to the railroad.

I think the charge of the judge was right, that the embankment was unauthorized by law, and a nuisance, as it impeded travel in an undoubted part of the ancient highway.

ELMER, J.  The only question in this case is, whether the Court of Oyer and Terminer was right in its construction of the ninth section of the act to incorporate the Warren Railroad Company, approved February 12th, 1851. This section makes it the duty of the company to construct and keep in repair good and sufficient bridges or passages over or under the said railroad, where any public or other road, then or hereafter laid out, shall cross the same, and so to alter and grade the said public or

other road that the passage of carriages, &c., shall not be impeded thereby.

In fulfilling this duty, the company entirely obstructed a few rods of a public road, and opened and graded another road of equal distance near to and nearly parallel with it; and proof was offered that the alteration was so made that the passage of carriages, &c., was not impeded thereby, but that it was a good and safe road. The court held that "altering the road means altering it where the public has placed it; they cannot take it up and put it in a new place."

I think this construction of the act was right. Had the word "alter" been used in the same or a like connection, as it is used in the second. and several other sections of the act concerning roads, (*Nix. Dig.* 701,) the construction, that it gave the power of altering in its most general sense, so as to include the power of vacating a road, or a part of it, and laying a new one, would have been reasonable and proper. But, in the law under consideration, it is used in an entirely different connection, and so as plainly to limit its meaning. It is not used in conferring a power respecting the highway to be exercised or not, at the discretion of the company; but it is used in imposing a duty so to alter and grade the existing road, that the railway in crossing the same shall not impede travelers. There is no power given, by express enactment or by implication, to occupy and appropriate to its own use the existing highway, but only the right to cross it; and wherever it shall be crossed, the company is required to alter and grade the road, so as to make it safe for the public use. This duty is imposed also in cases where a road shall, at any time hereafter, be laid so as to cross the railway. Whatever work or structures may be required to make a good and safe crossing is required to be done by the company. In common usage, to grade a street or road, means simply to change its level. But other alter-ations of the road at the place of crossing may be im-

portant to make it safe and convenient, as for instance, a fence or rails at the side of a necessary embankment; and it was therefore proper to use a word sufficiently comprehensive to embrace every change that might be required.

The construction insisted on by the company unnecessarily deprives the public authorities of the power over highways confided to them for the public good. If, as was argued, it was better for the public, as well as for the company, that the crossing should be effected by a change of the location of the highway at the place in question, this was a proper question to be submitted to those authorities in the mode provided for altering highways in all proper cases. If the consent of those authorities could not be obtained, the fair presumption is that the alteration, as proposed, was not expedient.

HAINES, J., concurred.

CITED in *Inhabitants of Greenwich* v. *Easton and Amboy R. R. Co.*, 9 C. E. Gr. 223.